Good morning, Your Honors, and may it please the Court, Robert Burke, B-E-R-K-E, for the petitioner Milton Martinez. Before I roll in, if I could request to reserve two minutes of my argument time for rebuttal, I'd appreciate it. The question that comes first and foremost to mind after having parsed through the briefing in this and the record in this case is, does the fact that a group within a society gains social distinction over time constitute a material changed country condition? And, of course, I'm going to argue that it does. The problem that I think that there is with the case is whether there's a timely time or number bar on the motions to reopen. Before you get to the merits, we really have to see how the – I guess this is an appeal from the motion to reopen in 2014. Is that right? That's correct, Your Honor. So how do we get to hear that motion? Simply on the changed country conditions, except for – Well, then why don't you address the question of whether there are changed country conditions? Yes, Your Honor. There are changed country conditions, and these can be seen in part and they can be seen as a whole. But there's a large part of the issue of changed country conditions that has to do with, that's inextricably intertwined with, this issue of particular social group. They're not divisible issues, and I think it needs to be addressed to some degree first. There are multiple changed country conditions that we've been talking about in the brief. But the center of all of this is we have a group of individuals that were not recognized as socially distinct in the years 2000, 2003, 2004. By the time we come to this motion to reopen, and by the time we have to make the argument there is a changed country condition, another way of saying now there is a cognizable asylum claim where before there was not a cognizable asylum claim. But what's the changed country conditions again? Well, there are multiples. The one I'm focusing on right here, and I'll discuss the rest of them as well. But the primary one where I think the focus needs to be on that is that within that country, within the country of El Salvador, you had a group within that society that was not recognized as socially distinct, that there's nothing that we could find in authorities' country conditions, there was nothing that we could find in newspaper articles that said this is a socially distinct group. But as of approximately 2009 and in the years after 2009, that group has become socially distinct. And we were able to document in our brief the fact that Salvadoran society does now recognize that this is a subpart of our overall society, that we recognize. And Carrera-Bac is extremely important in this regard because it's not necessarily an ocular recognition. It's a societal distinction that's being made. Some of the articles almost seemed counterintuitive, and the government was not slow to pick up on that, because they talk about efforts to reintegrate former gang members into the Salvadoran society. And it may be a head-scratcher as to why I put those articles in. But the reason those articles are there is to say Salvadoran society now recognizes this group. They recognize this group as having certain traits, having certain characteristics, having certain disadvantages in comparison to the greater El Salvadoran society. We've named them. We know who they are. We've created special programs for these people so that they can be identified  And this is your group of individuals who were gang members when they were young and then abandoned the gang and then allegedly are subject to retribution as a result. That's correct. And there are certain key elements that created definition on the parameters of that group. WGR, of course, in that case, the court, in this case, in quoting the WGR court in the Garay-Reyes case, noted that, look, this could apply to anybody, you know, men, women, old, young, part of the group, not part of the group. I believe the facts in Reyes was the guy was a member of the gang for under a year. We're only talking about people that joined the gang at a very young age, socialized through the gang, acclimated to the gang, bear the characteristics associated with that gang, not to mention the connections, the great web of connections that they gained through that gang. It's not a perfect comparison, and I don't want it to be because I'd be making the same mistake that the board made, but it is very similar to a familial relationship, especially in cases like Mr. Martinez's case, where he was involved with this gang from the time he was 12 years old. He even sets forth in his declaration that his approach to the world, and I'm paraphrasing, of course, but his approach to the world, his value set, his morals, who he loved, were all made a part of his being by virtue of his deep involvement with the gang as a youth, when he was impressionable, that becomes a part of his being and becomes a part of his personality, and then who later leave the gang and try to leave upstanding lives. We're not saying these are necessarily people that turned around and testified against the gang or turned on the gang or joined the police and started prosecuting gangs. These are people that were acculturated into a gang culture, who bear the marks of that in their attitudes, in their mannerisms, in their speech, and who are recognized in Salvadoran society as such when they go out and they try to integrate into larger society. That's what those articles that I've attached are saying. We know that these people are out there that are acculturated into the gang and don't know how to acculturate into our larger society. We recognize them, we identify them, we're trying to help them. The bottom line is we know they exist, we know they exist as a group, and this is a socially distinct group that needs something. Now, the fact that we have a socially distinct group recognized in later years, and I'm talking the 2009 and past, because that's where the articles start identifying this group and start saying we recognize this group and we've given some distinction to this group. So from 2009 forward, you have a sea change in El Salvador where something that was not recognized as a socially distinct group now is, and the articles make very clear it now is. Now Mr. Martinez has a cognizable asylum claim, where he did not in the past, and this court's precedents and the board's precedents are all going to be consistent with that. We don't recognize leaving the gang or having been a former gang member or anything else as being a socially distinct group. We now have articles from the Salvadoran press saying yes it is, we recognize it. Thank you so much, Your Honor, I appreciate the reminder. I'd like to reserve the remainder of my time unless there's a question. All right, well, can we ask you a question? Could any of his family members in the United States petition for adjustment of status now? It wouldn't work because of the older history on the case. He had that old in absentia deportation order. I believe it was Judge Einhorn, it was back in 2000 or 2001, the illegal reentry. That would have been the bar to the adjustment, and he would also run into, in all likelihood, a 212A9C problem, so I don't perceive it to be an illegal reentry or attempted reentry. It's not manifest, it's out there, though, if we were to try to adjust him. Adjustment wouldn't work. He would have to leave the country, he would trigger the bars, and it would be my assessment that in all likelihood it would be unwaivable. All right, thank you. Thank you, Your Honor. Thank you. May it please the Court, my name is Colette Winston. I represent the respondent, Jeff Sessions, in this case. The petitioner here has taken a giant leap over his burden of proof to reopen the case and has addressed the merits. I'm going to address the motion to reopen, which is the only issue here before the Court. The Court shouldn't be reaching the merits of the case because he has not, because Mr. Martinez has failed to meet his burden of proving material change country conditions in El Salvador that are sufficient to excuse the untimeliness of the second motion to reopen and its numerical absence. What period are we? We're dealing from 2003, I think, to when? To his second motion to reopen in 2014. So it's 2003 to 2014. Right, that 11-year period, and that's where the spotlight goes. And his 13 articles that he attaches to his second motion to reopen show that country conditions are poor, but they've remained poor. They've remained constant from before 2003 to that relevant period, 2003 to 2014. And the articles show that there are gang members that are involved in criminal activities, but no different than before. What about the specifics? Council is claiming that the big game-changer here is the fact that in some way, shape, or form in El Salvador they've now recognized particularized violence, I guess you might say, against individuals who have left gangs and are now trying to live a gang-free lifestyle. Your Honor, in the 13 articles that he attaches, there's just one article, which is about seven or eight lines long, dealing with a former gang member who was called Smokey, and he was an original MS-13 gang member. And it's not clear from that article why he was targeted. Was it because he was a former gang member, or was it because he was, quote, working to keep kids out of gangs? It's not at all clear from that article. So out of the 13, there's no article that really addresses former gang members being mistreated by present gang members. In fact, it's quite the opposite. Many of the former gang members have successfully opened bakeries, opened a poultry farm, have tried to rehabilitate themselves, and have tried to mainstream themselves back into society. Well, I'm having a real hard time seeing how leaving a gang would not have made you subject to retribution from time immemorial. I mean, it seems to me like this is something that has gone on forever. Very possibly, and that's why it's not a change in country conditions. There has to be a material change, and he has to meet that burden of proof before he can even start to address Peer or Bach and the particular social group, and whether he can meet his burden of proof in a merits hearing. And this court has to decide that the board has somehow abused its discretion and has acted irrationally or capriciously or against the contrary to law in order to reopen the case. And if this case is reopened, then the petitioner can address whether he has articulated a particular social group and whether he has a group that has social distinction. But you don't get to Step 2 until you've addressed Step 1. And my argument is about Step 1. Counsel's argument is about Step 2. And the board's decision is well-reasoned. It's based on the articles and the exhibits attached to his second motion to reopen, and he has not met his burden of showing a change. So because something has occurred since time immemorial, de facto means that there's been no change, and he has the burden of showing a material change of country conditions which is sufficient to meet his burden of proof. So you have both materiality and sufficiency, and he meets neither one. So you never get to the merits here. He also argues in his petition, Mr. Martinez, in his petition for review and his brief, that there's been an end of the gang's truce in El Salvador. But the articles don't bear that out. If anything, perhaps at the most the gang truce is now more fragile than it's been, and it's a truce between the gangs and the government of El Salvador. But there's nothing in the articles that show that it has ended. So there is no change of country conditions. The violence and the crimes in El Salvador preceded 2003, and that's the reason why he hasn't met his burden of proof, because you have to show a distinction, a difference, an increase, and more of a targeting. And former gang members just don't come up in these articles that have been attached to his motion to reopen, his second motion to reopen. So if there's no further questions, the decision here is not arbitrary or capricious. It's not contrary to law. The court should give deference to the board, because the standard by which the court needs to analyze the case is abuse of discretion, and there has been no abuse of discretion here. Mr. Martinez did not meet his burden of showing a material change of country conditions in El Salvador that are sufficient. I understand this case was once at mediation, but he first came to the United States at the age of 12 in 1982, and then after he was brutally beaten, I guess, in El Salvador, he returned again in 2000, was that it? He returned to El Salvador in 1993. No, he returned here in 2000. I mean, he returned to the United States in 2000 after he was attacked by the members of his former gang, and he's been here ever since. He's now 47. That was 17 years ago. He's now 47. He takes care of his mother. His mother, father, and brother are all here. He's got an untold number of affidavits from the church, from charitable organizations, about what a fine person he is, what a contribution he makes to the country. Is there no way in mediation that a sensible result could be reached? I don't believe so, Your Honor. If the law were sympathy, then he might win, but that's not the law. The law is he has a burden. He was ordered deported in absentia in 1993. He filed a cancellation of removal application that he didn't qualify for. He went to the board after an immigration judge denied the cancellation of removal. Well, the question really isn't directed to the law. It's really the exercise of discretion. Right, but the agency has chosen not to exercise discretion in this case. We gave the agency another chance, is what I'm saying, to be decent. It may be a hopeless question with this agency, but maybe not. Maybe some have more confidence that the agency could be decent. Well, from my understanding, he has a robbery conviction. No, that's been vacated. Yes, he pled guilty, and that was set aside by the California courts. Right, I realize that. It was vacated in 2012. I don't think the agency is going to accept using prosecutorial discretion. I'm happy to address that question with the agency, but I don't think at this point, after he's already filed two motions to reopen, that the agency is going to be amenable to that, but I can certainly ask. Well, that's one possibility. It might be pointless to order mediation, but you never know when people see the light. You did mediation previously. I believe he did mediation. When was that? How long ago was that? Frankly, Your Honor, I'm not exactly sure. It was some time ago, though. It was during the Obama administration, right? Probably about eight years ago. It was during the Obama administration. I believe it was at the beginning of the Obama administration, but I can't remember that. It didn't work the first time, so I'm not saying anything about it. That was before the California courts set aside the conviction. The conviction was set aside in 2012. So if it were at the beginning of the Obama administration, that would have been before. Maybe opposing counsel would know when he gets up. Maybe, but I don't recall. I was the person who briefed the case, but only after the second motion to reopen. All right, well, maybe opposing counsel would know the date. I don't know. He doesn't know either. Okay, great. It is a very sympathetic case when you read the affidavits. It's not a normal run-of-the-mill case. It seems like a person who's really making a contribution to this community. That may be, but the law... That's not the present standard is what you're saying to us. That's not the standard, exactly. I'm not saying that's not the standard. I'm saying you're telling us that's not the standard. Yes. All right. That's not the standard that the court should be using. No, it's not the court. We're saying that if it went to mediation, the government could use its discretion. We can't exercise that discretion. It would have to be done by the government, and we thought now that we have a new attorney general, maybe we should give him a chance to show how warm-hearted he is. We can certainly try, but I'm not holding my breath. All right. Thank you. Counsel. If I may. Four things I want to address very, very quickly. I do not recall, Your Honor, having engaged in mediation through the circuit mediator. I remember when we revisited the issue after we vacated the conviction. There did not seem to be an inclination, at least from district counsel, at the motion to reopen phase to want to exercise prosecutorial discretion. But I do not recall having... You got back to the government after the conviction was vacated to explore mediation and the response you got back was negative? That's what my notes were indicating to me. But I do not have any recollection of having used the circuit's mediation program in pursuing that. The other points that I wanted to address very, very quickly were I do disagree with the government about country conditions not having changed and about the gang truce. I would call the court's attention to page 92 of the certified administrative record. It is acknowledged there Police Inspector Perez-Reyes would not confirm the government had a role in the truce but said it appears the gangs are back at war. We have nothing to do with the truce. Well, so could you not go quite as quickly? Oh, I'm sorry. But the point is, on page 92, the police inspector is saying it appears the gangs are back at war and he goes, however, police now say that since January, and this is 2014, this is a 2014 article, the murder rate has increased reaching as many as nine homicides per day. That's not the only article that talks about a sharp uptick in gang violence in that 2014 period of time. The second one is the government did exactly what the board did in terms of conflating step one and step two. I don't think in terms of not conflating step one and step two. I'm always the one who's saying, ah, they conflated, they made a mistake. In this case, I think they have to be. The materiality, the question of materiality of a changed country condition is, is it relevant, is it probative? And the bottom line is, if a society at large is now saying we recognize this group that we didn't recognize before as being socially distinct, that is a material change, that is a probative change. That having been said, unless there's a question, I'm willing to submit. Thank you, counsel. Thank you both. The case just argued will be submitted. Thank you.
judges: Reinhardt, Nguyen, Ezra